FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 23, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MOHANAD ELSHIEKY,<br>    Plaintiff,<br>    v.<br>UNITED STATES OF AMERICA,<br>    Defendant. | No. 2:20-CV-00064-SAB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

Before the Court is Defendant's Motion to Dismiss, ECF No. 4. A telephonic hearing on the motion was held on June 16, 2020. Defendant was represented by Assistant United States Attorneys John T. Drake and Derek T. Taylor. Plaintiff was represented by Benjamin J. Robbins, Matthew H. Adams, Jordan C. Harris, Lisa Nowlin, and Kenneth E. Payson.

Plaintiff Mohanad Elshieky is suing the United States Customs and Border Protection (CBP), alleging CBP agents approached him and detained him at the Spokane Intermodal Center without probable cause because of his North African appearance. He is bringing claims under the Federal Tort Claims Act (FTCA), 28 U.S.C § 1346(b)(1). The underlying basis for his FTCA claims are Washington state law claims of (1) False Arrest; (2) False Imprisonment; and (3) the Washington Law Against Discrimination (WLAD), Wash. Rev. Code 49.60 *et seq*.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 1**

The United States moves for the dismissal of the third claim, namely the claim under the WLAD for discrimination in the public accommodation context.[1] First, it argues the WLAD claim must be dismissed because the United States has not waived its sovereign immunity for state civil rights claims in general.[2] It also argues the United States has not waived sovereign immunity for the specific WLAD claim at issue.

Second, the United States argues Plaintiff has failed to state a claim under the WLAD for two reasons: (1) Plaintiff has failed to show he was denied the "full enjoyment" of the place of public accommodation; and (2) the United States is not the proper defendant in this case because it does not have connection to the place of public accommodation.

//
//
//

---

[1] The FTCA explicitly waives sovereign immunity for any claim based on the "acts or omissions of investigative or law enforcement officers arising out of false imprisonment and false arrest." 28 U.S.C. § 2680(h).

[2] The United States again asks the Court to extend the reasoning of *Delta Sav. Bank v. United States*, 265 F.3d 1017 (9th Cir. 2001), to create a blanket rule that state civil rights claims are barred under the FTCA. The United States made this argument in a related case, *Segura v. United States*, 418 F.Supp.3d 605 (E.D. Wash. 2019). There, the Court declined to impose a blanket rule that the United States has not waived its sovereign immunity for state civil rights torts. *Id.* at 610. Instead, it concluded it was necessary to conduct the analogous private-party analysis. *Id.* The United States reasserts its blanket-rule argument to preserve it for appeal. The Court adopts the same reasoning as in *Segura* to conclude that courts are required to find analogous private-party conduct in assessing whether the FTCA waives the United States' sovereign immunity.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** ~ 2

## Motion Standards

### 1. Fed. R. Civ. P. 12(b)(1): Lack of Subject Matter Jurisdiction

Pursuant to Fed. R. Civ. P. 12(b)(1), a district court must dismiss a Complaint if it does not have jurisdiction over it. In a "facial" jurisdictional challenge, the moving party is asserting that the allegations in the Complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). This type of jurisdictional challenge is limited to the allegations made in the Complaint. *Wolfe v. Strankman,* 392 F.3d 358, 362 (9th Cir. 2004). When evaluating a "facial" jurisdictional challenge, the Court accepts the allegations asserted in the Complaint as true and must draw all reasonable inferences in favor of the non-moving party. *Id.*

### 2. Fed. R. Civ. P. 12(b)(6): Failure to State a Claim

Pursuant to Fed. R. Civ. P. 12(b)(6), a district court must dismiss a Complaint if the plaintiff fails to state a claim upon which relief can be granted. While detailed factual allegations are not required, the Complaint must state "sufficient factual matter… to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). When evaluating a 12(b)(6) motion, the Court must draw all reasonable inferences in favor of the non-moving party. *Wolfe*, 392 F.3d at 362. The allegations in the Compliant, which are accepted as true, must allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Bell Atl. Corp*, 550 U.S. at 556.

To survive a 12(b)(6) motion, the allegations must allege "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Whether the Complaint states a claim for plausible relief is context specific and requires the Court to draw from its experience and common sense. *Id.* However, the Court is not required to accept as true any conclusory allegations, or any unreasonable inferences made in the Complaint. *In re Gilead*

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 3**

*Scis. Sec. Litig.*, 536 F.3d 1049, 1054 (9th Cir. 2008).

## Background Facts

The following facts are taken from the Complaint, ECF No. 1, and are accepted as true:

On January 27, 2019, Plaintiff was traveling by Greyhound bus back to Portland, Oregon from Pullman, Washington after performing a comedy show at Washington State University. Shortly after Plaintiff boarded his transfer bus at the Spokane Intermodal Center, two armed United States Customs and Border Protection (CBP) agents boarded the bus. One of the CBP agents walked down the bus and questioned three passengers of apparent Hispanic descent, two of whom were asked to leave the bus.

The CBP agent then approached Plaintiff. The agent asked Plaintiff for identification and Plaintiff provided his valid, unexpired Oregon driver's license.[3] After examining the license, the CBP officer asked Plaintiff if he was a United States Citizen. Plaintiff replied he was a Libyan citizen, and not a United States citizen. The CBP agent then blocked Plaintiff's exit from the seat and requested that Plaintiff produce a passport. Plaintiff replied that he did not have one with him, and the CBP officers asked if Plaintiff had any other form of identification. Plaintiff then provided his original employment authorization document (EAD), which is issued by United States Customs and Immigration Services (USCIS). The CBP agent then order Plaintiff off the bus.

Once outside, another CBP agent, along with the original CBP agent, approached and started questioning Plaintiff. Plaintiff explained that he had been granted asylum and was legally present in the United States. The CBP agents asked if he had his asylum approval documents. Plaintiff responded that he did

---

[3]Oregon law requires proof of lawful presence in the United States to obtain a driver's license. *See* Or. Rev. Stat. § 807.021(1).

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 4**

not, but that he did have a valid EAD, issued by USCIS. After replying that, "illegals fake these [documents] all the time," one of the agents took Plaintiff's documents and made a phone call. Plaintiff heard the CBP agent read off his information and the person on the other end verify that there was some record of Plaintiff.

This agent then re-approached Plaintiff and stated that there was no record of Plaintiff's asylum grant, but there was a record of Plaintiff entering the United States with a now-expired J-1 visa. Plaintiff responded that he was granted asylum in October of 2018. The CBP officers insisted there was no record of Plaintiff's asylum case. Plaintiff then stated that he wished to speak to his lawyer and wanted his paperwork back. The original CBP agent yelled at Plaintiff, and the two agents conferred with one another. The agents then told Plaintiff that they would "let him go this time." After twenty minutes, Plaintiff was able to re-board the then late bus, which left right away.

1. **Fed. R. Civ. P. 12(b)(1)**

The United States argues the Court does not have subject matter jurisdiction over Plaintiff's WLAD claim because it has not waived its sovereign immunity for WLAD claims. It is true the United States cannot be sued unless Congress waives its sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Jurisdiction over any suit against the United States requires a clear statement from Congress waiving its sovereign immunity. *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (quoting *United States v. Mitchell*, 445 U.S. 535, 538-39 (1980)). In passing the Federal Tort Claims Act (FTCA), Congress waived its sovereign immunity "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. This waiver is in accordance with the law of the place where the act or omission occurred. 28 U.S.C § 1346(b). If the law of the state where the act or omission occurred would hold a private party liable, the United States will be liable for the same. *Schwarder v.*

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 5**

*United States*, 974 F.2d 1118, 1122 (9th Cir. 1992).

In passing the FTCA, Congress did not create a new cause of action, but rather accepted liability under circumstances that would create private liability. *Feres v. United States*, 340 U.S. 135, 141 (1950). The United States waives its sovereign immunity where local law would make a "*private person* liable in torts." *United States v. Olson*, 546 U.S. 43, 45 (2005) (emphasis in original). While the United States can never be exactly like a private actor, the Court must find the most reasonable analogy to the government's actions to private liability. *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016). In doing so, the words "like circumstances" within 28 U.S.C. § 2674 do not limit the Court to looking into the same circumstances, "but require it to look further afield," *Olson*, 546 U.S. at 44 (citing to *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)). In *Indian Towing*, the U.S. Supreme Court held that the FTCA waived the United States sovereign immunity for a claim that alleged the U.S. Coast Guard negligently operated a lighthouse. 350 U.S. at 62. It found that these allegations were analogous to allegations of negligence by a private person "who undertakes to warn the public of danger and thereby induces reliance." *Id.* at 64-65. Although the federal government "could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy." *Dugard*, 835 F.3d at 919.

Thus, the first step in determining whether the WLAD imposes tort liability upon a private person for the wrongful conduct alleged in Plaintiff's complaint is to identify a reasonable private party analogy to the CBP's actions. *Id.*; *Segura v. United States*, 418 F.Supp.3d 605, 610 (E.D. Wash. 2019); *see supra* fn. 2. In *Segura*, the Court concluded the reasonable analogous private party conduct for the CBP officers in like circumstances was that of a private security officer, and because Washington courts would hold a security guard's company liable for the discriminatory conduct of its security guards, the United States waived its

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 6**

sovereign immunity with respect to the plaintiff's WLAD claim. *Id.* at 613.

The United States asks the Court to reconsider its reasoning and conclusions, arguing that the proper analysis is a private citizen acting in a private capacity, relying on the Second Circuit's decision in *Liranzo v. United States*, 690 F.3d 78, 82 (2nd Cir. 2012). The United States relies on *Liranzo* to argue that this Court must analogize the CBP's conduct to a "person who, entirely is his or her private capacity, places someone under arrest for an alleged violation of the law." ECF No. 4. It asserts that using the private security guard analogy misses the mark because it assumes a connection between the CBP agents and the Intermodal Center, or stated another way, that there is an employment or agency relationship between the CBP agents and the Intermodal Center.[4]

Here, the Court reaffirms that the private security guard is the proper private party analogy for the CBP's conduct as alleged in Plaintiff's Complaint. The Court notes that the facts as alleged do not support a finding that the CBP agents' conduct is analogous to a person effectuating a citizen's arrest. Under Washington law, a private citizen may detain a person for a misdemeanor if it (1) constitutes a breach of peace and (2) is committed in the citizen's presence. *State*

---

[4] The United States made this argument in *Segura* as well. In that case, the United States asked the Court to dismiss the WLAD claim because the CBP agents who engaged in the alleged discrimination were not employees or agents of the Spokane Intermodal Center and the United States did not own, operate, or exercise control over the Spokane Intermodal Center. *Segura*, 418 F. at 613. The Court declined to read the WLAD so narrowly. *Id.* Given that the facts alleged suggested that the CBP officer did not just happen to show up at the Spokane Intermodal Center, it concluded the WLAD covered situations where federal officers enter places of accommodation and wield their power over individuals at places of accommodations. *Id.*

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 7**

*v. Garcia*, 146 Wash. App. 821, 824 (2008). There is nothing in the facts alleged by Plaintiff suggesting he was breaching the peace to permit the CBP officers to conduct a citizen's arrest, nor did the CBP have sufficient suspicion or probable cause that Plaintiff was committing a misdemeanor. The private citizen's arrest is not the most reasonable private party analogy.

Moreover, just as the Court found in *Segura,* Washington law would hold a security guard company liable for the discriminatory conduct of its security guards and the United States, as employer of the CBP agents, would be liable to Plaintiff under the WLAD as if it were the security guard company. *Id.* at 613. Consequently, because the WLAD imposes tort liability upon a private person for the wrongful conduct alleged in Plaintiff's Complaint, it follows that the FTCA waives the United States' sovereign immunity for Count 3 of the Complaint.

2.     **Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim**

Wash. Rev. Code 49.60.215 prohibits discrimination in the realm of public accommodations. The statute provides:

> (1) It shall be an unfair practice for any person or the person's agent or employee to commit an act which directly or indirectly results in any distinction, restriction, or discrimination, or the requiring of any person to pay a larger sum than the uniform rates charged other persons, or the refusing or withholding from any person the admission, patronage, custom, presence, frequenting, dwelling, staying, or lodging in any place of public resort, accommodation, assemblage, or amusement, except for conditions and limitations established by law and applicable to all persons, regardless of race, creed, color, national origin . . . . .

Wash. Rev. Code 49.60.215.[5]

Protected individuals are guaranteed "[t]he right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of

---

[5] Wash. Rev. Code 49.60.215 was amended on March 18, 2020, effective June 11, 2020, to prohibit discrimination based on citizenship or immigration status.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 8**

public resort, accommodation, assemblage, or amusement." Wash. Rev. Code 49.60.030(1)(b); *State v. Arlene's Flowers, Inc.*, 193 Wash.2d 469, 501 (2019).

To state a claim for relief under the WLAD for discrimination in the public accommodation context, the plaintiff must show (1) the plaintiff is a member of a protected class, (2) the defendant is a place of public accommodation, (3) the defendant discriminated against the plaintiff, directly or indirectly, and (4) the discrimination occurred "because of" the plaintiff's status, or in other words, the plaintiff's protected status was a substantial factor causing the discrimination. *Arlene's Flowers, Inc.*, 193 Wash. 2d at 501-02.

### a. Denial of Full Enjoyment of Public Accommodation

The United States argues Plaintiff has failed to state a claim upon which relief can be granted because he was able to re-board the bus and therefore, he cannot show that he was denied access to the public accommodation and was not deprived of its full enjoyment.

The Court disagrees. The WLAD's "full enjoyment" language extends "beyond the denial of services to include liability for mistreatment that makes a person feel 'not welcome, accepted, desired or solicited.'" *Floeting v. Grp. Health Coop.*, 192 Wash. 2d 848, 855 (2019), quoting *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 450 (1964) ("The 'fundamental object' of laws banning discrimination in public accommodation is 'to vindicate the deprivation of personal dignity that surely accompanies denials of equal access to public establishments.'"). The statute's primary purpose "is to the withholding or refusing of admission to places of public accommodation, and the use of their facilities on equal footing with all others." *Fell v. Spokane Transit Auth.*, 128 Wash. 2d 618, 636 (1996).

Plaintiff has sufficiently alleged he was deprived the full enjoyment of a place of public accommodation.

//

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 9**

### b. Control of the Spokane Intermodal Center

The United States also asserts that Plaintiff cannot establish the second element of the public accommodation claim because the United States is not a place of public accommodation. As it does not own, operate, or assert control over the Intermodal Center, it cannot be sued for violations of the public accommodation provision of the WLAD.

Once again, this Court declines to read the WLAD as narrowly as the United States suggests. The CBP agents did not just happen to show up at the Intermodal Center. In *Segura,* the Court found that the WLAD covered instances where federal officials "wield their power over individuals at places of accommodation" *Segura*, 418 F.Supp.3d at 613. As alleged in the Complaint, the CBP agents entered the bus without a valid ticket, questioned passengers about their legal status in the United States, removed persons from the bus, and delayed the departure of the bus. It is reasonable to infer from these allegations that the CBP agents asserted sufficient control over a place of public accommodation to state a claim against the United States for violating the public accommodation provision the WLAD.

At this stage of the proceedings, Plaintiff has stated a valid claim that can proceed beyond the pleading stage and into discovery.

//
//
//
//
//
//
//
//
//

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 10**

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Dismiss, ECF No. 4, is **DENIED.**

**IT IS SO ORDERED.** The Clerk of Court is directed to enter this Order and forward copies to counsel.

**DATED** this day of 23rd June 2020.



*Stanley A. Bastian*
Stanley A. Bastian
United States District Judge

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 11**